# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

YVETTE BRYANT
*PERSONAL REPRESENTATATIVE*
of the Estate of MICHAEL FARRAR

Plaintiff

v.

CORRECTIONS CORPORATION
Of AMERICA, INC

and

CENTER FOR CORRECTIONAL
HEALTH AND POLICY STUDIES, INC

and

DISTRICT OF COLUMBIA
GOVERNMENT

Defendants

CASE NUMBER 1:05cv02089
Judge Kollar Kotelly
Deck Type: Civil

## AMENDED COMPLAINT

This is a survival action brought under 42 USC § 1983 for injuries resulting from deliberate indifference to a serious medical need that resulted in the death of decedent. A policy and practice employed by the District of Columbia Government and the Corrections Corporation of America, Inc. (CCA) to deprive inmates committed to the Central Treatment Facility (CTF) of adequate medical care is also alleged. This court also has jurisdiction to decide the local common law claims of medical malpractice and infliction of emotional distress under the court's pendant jurisdiction.

## PARTIES

Yvette Bryant, Personal Representative to the Estate of Michael Farrar, is a resident of Alexandria, Virginia. Michael Farrar, the decedent, was at all times relevant an inmate under the supervision and care of the District of Columbia Government.

The District of Columbia Government is a municipal corporation with its principal office located at 1350 Pennsylvania Avenue N.W., Washington DC. 20005

The Corrections Corporation of America, Inc. (CCA) is a corporation that manages prisons throughout the United States and which is licensed to conduct business in the District of Columbia.

The Center for Correctional Health and Policy Studies, Inc. (CCHPS) is a corporation licensed to conduct business in the District of Columbia and who assists in the delivery of health care to incarcerated inmate.

## FACTS

1. Michael Farrar, the decedent, at all times relevant, had been committed to the custody and care of the District of Columbia Government to serve a sentence for criminal acts.
2. At all times relevant, the decedent, was a diabetic and was also receiving medical treatment in the form of dialysis for end-stage renal disease.
3. On December 28-29, 2003, Michael Farrar (DCDC# 181266) had been assigned to the sick ward of the CTF. He was a diabetic and was also suffering from end stage renal disease. His condition had advanced to a stage where he required dialysis approximately every three to four days.
4. Medical records of Michael Farrar reveal that prior to his death he was frequently transported to Greater Southeast Community Hospital to relieve the fluid build-up around his heart and other parts of his body.
5. After undergoing dialysis treatment on December 28, 2003, decedent complained that he was not feeling well. The complaints continued into the early morning hours of December 29, 2003.
6. Michael Farrar as well as other inmates on the sick ward were secured in locked cells; a call button was located inside each cell unit in order to allow the inmate access to medical personnel should the need arise.

2

7. On information and belief, the cell units on the sick ward were to be routinely monitored by either the medical staff or the correctional staff of CTF, or both.

8. During the early morning hours of January 29, 2003, Farrar's physical health deteriorated. He repeatedly cried out for medical assistance complaining that he was experiencing difficulty in breathing. Upon receiving no response from engaging the call button within his cell, decedent created noise on the bars of his cell to attract attention to his plight.

9. Other inmates housed on the sick ward heard Farrar's plea for medical assistance and began banging on their cell door and ringing the medical call button in their cells, to no avail.

10. After 4:00 am, during a routine patrol of the sick ward, Farrar was observed in his cell in a state of unconsciousness. Upon a further examination, his vital signs could not be detected.

11. Michael Farrar's death was pronounced thereafter and an autopsy report indicated that the cause of death was chronic congestive heart failure.

12. On information and belief, had correctional officials or medical staff, on duty, responded to Farrar's call for assistance and provided him with medication that would evacuate the fluid from his body or transported him to a hospital so that the fluid-buildup could have been evacuated intravenously, his death would not have occurred.

13. Defendant CCA as well as the District of Columbia over the past several years has demonstrated a consistent pattern of gross negligence and willful disregard for the medical care of inmates committed to its custody. There are numerous instances in which inmates have died or lost the use of parts of their anatomy or senses due to the absence of or negligent delivery of medical care.

14. Since 1993 a number of reports have been critical of the care inmates received while under the care and supervision of the District of Columbia Government. Judicial Notice is available to establish that on more than one occasion the District was held in contempt of court for failing to deliver adequate medical care to inmates.

15. The instances referenced above, among others, establish a custom, practice and policy of delivering inadequate medical care as well as demonstrating deliberate

indifference to serious medical needs of inmates that the policy makers of the District were aware through court orders, expert reports, and lawsuits culminating in sizable verdicts or settlements against the District.

16. This awareness extends downward to delegatees of municipal functions and services as CCA who has the contractual responsibility of maintaining the CTF, where the death of Michael Farrar occurred. In this connection, the District's liability remains since it maintains a permanent monitor at the CTF to supervise and monitor the treatment that inmates receive and accordingly, has knowledge that the policy of providing inadequate medical care to inmates remains. Moreover, from a constitutional perspective, the District can not delegate its liability for its statutory obligation to provide care and protection to inmates committed to its custody.

## COUNT I
### (Policy & Practice of Deliberate Indifference DC, CCA & CCHPS)

17. Plaintiff incorporates Paragraphs 1 through 16 of the complaint as if fully recited herein.

18. Defendant District of Columbia has the statutory responsibility to maintain the health and safety of inmates committed to its custody. The District of Columbia contracted with CCA to manage and operate the CTF. The implementation of the functions and responsibilities under the contract between the District of Columbia and CCA were performed under color of state law.

19. Thereafter, a policy and practice emerged and culminated into a pattern and practice of delivering grossly deficient medical care to inmates housed at the CTF until the medical care, or lack thereof, reached a point of translating into an institutional policy of deliberate indifference to serious medical needs of inmates.

20. This deliberate indifference manifested itself when either correctional employees or medical staff of the CCA or medical personnel of CCHPS failed to provide adequate medical treatment to address the serious medical needs of inmates.

21. Among others, on December 28-29, 2003, Michael Farrar's continuous and repeated calls for medical assistance as the congestion around his lungs and heart interfered with his ability to breath and later deprived his heart of oxygen until its stopped beating manifested this deliberate indifference to a serious medical need.

22. CCA and CCHPS were under a duty to provide inmates, including Michael Farrar, with adequate medical care and were deliberately indifferent to his serious medical conditions when they intentionally or recklessly failed to respond to his obvious and apparent need for medical intervention during the early morning hours of December 29, 2003.

23. The District of Columbia was under a duty to monitor the delivery of health care to inmates housed at the CTF in order to assure that adequate medical care was delivered, consistent with its statutory and constitutional obligations.

24. The District of Columbia knowingly permitted a policy and practice of deliberate indifference to develop as CCA and CCHPS carried out, or failed to carry out, its contractual obligations of delivering adequate health care to inmates at the CTF.

25. The deliberate indifference of CCA and CCHPS to a serious medical need and the failure of the District of Columbia to monitor the delivery of health care to inmates at the CTF was the proximate cause of decedent's death.

WHEREFORE, for violating Plaintiff's constitutional rights embodied in the Eighth Amendment, Plaintiff requests compensatory damages against CCA, and CCHPS, jointly or severally, in the amount of 12 Million Dollars ($12,000,000) for pain, suffering and economic damages and punitive damages against CCA and CCHPS, jointly and severally, in the amount of 30 Million Dollars ($30,000,000). As against the District of Columbia, compensatory damages in the amount of Six million Dollars ($6,000,000) are requested. In addition, Plaintiff requests that reasonable attorney fees be awarded consistent with the statute.

### COUNT II
(Eighth Amendment Violation
Deliberate Indifference CCA & CCHPS)

26. Plaintiff incorporates Paragraphs 1 thorough 25 as if fully recited herein.

27. Defendants CCA and CCHPS operated and managed the delivery of medical care to inmates housed at CTA under the color of state law.

28. Defendants were under an obligation to provide medical care consistent with the standards of the profession.

29. CCA and CCHPS acted with deliberate indifference and recklessness to serious medical needs of Michael Farrar when these Defendant corporations failed to

maintain him on an appropriate diet consistent with preventing an exacerbation of the diabetes. Defendants also failed to maintain Plaintiff on a diet that would not result in complications of his end state renal disease, failed to consistently monitor his fluid and related levels, especially after undergoing dialysis, failed to continuously monitor his medical condition and vital signs while he was housed on the sick ward of the CTF, and failed to provide him with 24-hour access to medical personnel who could address the life-threatening symptoms related to his diseases.

30. The intentional and/or reckless failure of Defendants to follow fundamental procedures and protocols related to the treatment of diabetes and end-stage renal disease and intentionally or recklessly failing to respond to decedent's pleas for medical assistance combined to create a callous and deliberate indifference to the serious medical needs of decedent on December 29, 2003.

31. The deliberate indifference noted in the above-instances was the proximate cause of the death of the decedent.

WHEREFORE, Plaintiff demands compensatory damages against CCA and CCHPS, jointly and severally, in the amount of 12 Million Dollars ($12,000.000) for pain, suffering, and economic loss and 30 Million Dollars ($30,000.000) in punitive damages. In addition, Plaintiff requests that reasonable attorney fees be awarded consistent with the mandates of § 1983.

### COUNT III
(Negligence in Hiring, Retention, Monitoring & Supervision: DC)

32. Plaintiff incorporates the allegations contained in Paragraphs 1 through 31 as if fully recited herein.

33. The District of Columbia is and at all times relevant was under a statutory duty to provide reasonable medical care to prisoners incarcerated in the District of Columbia penal system. The District of Columbia had an obligation to ensure that proper medical care was being delivered to inmates at the CTF.

34. The District of Columbia negligently failed to discharge this duty by failing to adequately hire, retain, monitor, and supervise the nature and quality of medical care delivered to inmates, in general, and decedent, Michael Farrar, in particular.

35. The failure of the District of Columbia to adequately hire, retain, monitor, or supervise the nature and quality of the care being delivered to Michael Farrar was the proximate cause of decedent's death.

WHEREFORE, Plaintiff demands judgment against the District of Columbia in the amount of 12 Million Dollars ($12,000,000) plus the cost of this lawsuit.

## COUNT IV
(Medical Malpractice
CCA & CCHPS)

36. Plaintiff incorporates by reference the allegations contained in Paragraphs Numbered 1 through 35 as if fully recited herein.
37. Defendants CCA and CCHPS were under a duty to provide Michael Farrar with adequate medical care consistent with the medical standards of the profession.
38. Defendants breached said duty when they failed to maintain Michael Farrar on a low-salt diet, failed to consistently monitor his vital signs, failed to provide him immediate access to medical personnel, especially following dialysis, and failed to respond to his call for medical assistance when he was experiencing shortness of breath and/or failed to provide him with appropriate medication to temporarily relieve his symptoms.
39. As results thereof, decedent's heart became congested with fluid and he thereafter went into cardiac arrest.
40. The failure of Defendants to adhere to acceptable standards of medicine in providing decedent with medical care was the proximate cause of decedent's death.

WHEREFORE, Plaintiff requests that compensatory damages, in terms of pain, suffering, and economic damages, be awarded against CCA and CCHPS, jointly and severally, in the amount of $12 Million Dollars ($12,000,000) and $30 Million ($30,000,000) in punitive damages.

## COUNT V
(Infliction of Emotional Distress)

41. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 39 as if fully recited herein.

7

42. Defendants' conduct in failing to respond to Plaintiff when he cried out for medical assistance and/or in failing to administer an appropriate diet was intentional, reckless, and presented a high degree of probability that emotional distress would result to Plaintiff.

43. The aforesaid conduct by Defendants and Defendants' agents, servants or employees was extreme, outrageous and beyond the bounds of decency in society.

44. The conduct of Defendants was malicious, willful, reckless and intentional.

45. Because of the aforesaid conduct and actions perpetrated by Defendants and their agents, servants or employees, within the scope of their employment, Michael Farrar was caused to suffer severe and extreme emotional as well as physical distress as his pleas for medical help went unanswered and as he slowly experienced the life force exit his being.

WHEREFORE, Plaintiff demands judgment against Defendants CCA and CCHPS, Inc., jointly and severally, in the amount of Six Million Dollars ($6,000,000) and punitive damages in the amount of Twelve Million Dollars (12,000,000.).

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

Sherman Robinson 956128
5535 Wisconsin Avenue NW #440
Washington DC, 20015
(202)686-4858/(301)596-4999

Barry Tapp 209395
14662 Cambridge Circle
Laurel Md., 20770
(301)725-6030

8