**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

YVETTE BRYANT, Personal Representative of the
Estate of MICHAEL FARRAR,

                        Plaintiff,

    v.

CORRECTIONS CORPORATION OF AMERICA,
INC., et al.

                  Defendants.

Civil Action No. 1:05-CV-02089
Judge Colleen Kollar-Kotelly

**CORRECTIONS CORPORATION OF AMERICA'S RESPONSE TO
PLAINTIFF'S MOTION TO COMPEL THEM TO PROVIDE ADDITIONAL
ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

    Defendant CORRECTIONS CORPORATION OF AMERICA, INC. ("CCA"), through

counsel, hereby opposes Plaintiff's Motion to Compel and requests this Court issue its order

denying same. CCA has provided full and complete responses to the interrogatories and

production of documents propounded by Plaintiff to the extent possible and has repeatedly

advised Plaintiff that it cannot provide some of the requested information due to the fact that 1)

such information is not within its possession or control; and 2) cannot retrieve some of the

information due to circumstances beyond its control.   This opposition is supported by the

following Memorandum of Points and Authorities, pursuant to LCvR 7(a).

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

    Plaintiff submits that she has attempted to obtain discovery responses from CCA on three

interrogatories but CCA has refused to provide such. CCA has explained in detail, both verbally

and through written correspondence why it is unable to provide Plaintiff with her desired

responses.

A.    **Interrogatory Number 2 – Due to Both Circumstances Beyond Its Control And The Fact That CCA Does Not Keep Such Data, CCA Is Unable to Provide Plaintiff With Her Requested Information Regarding The Inmates Housed In Medical 82 On December 29, 2003**

Plaintiff compels CCA to provide the name, DCDC No. and last known address, of all inmates housed on Medical 82 on December 29, 2003, including the inmate's current whereabouts and if released, the inmates parole officer or emergency contact. CCA has provided a full, fair and legally valid response to this interrogatory.

On June 19, 2006, CCA received Plaintiff's First of Interrogatories. Upon receipt, CCA consulted with Donald Howard Paul, the Internal Affairs Investigator at CTF, in order to provide detailed and accurate responses. Mr. Paul advised undersigned that with respect to Interrogatory number two (2), CCA does not possess the name, DCDC No., transfer location, custody supervisor, or parole officer of former inmates. In fact, pursuant to the terms of CCA's contract with the District of Columbia, CCA is not responsible for determining release dates or tracking former inmates once they are either released or transferred from CTF. Rather, all records pertaining to those inmates are given over to the District of Columbia Department of Corrections or Bureau of Prisons and although CCA does have access to those entities' Inmate Management System, the system does not permit CCA to make a relational query of all records. The last address CCA would have for former inmates would be the one at CTF. (*See* Affidavit of Donald Howard Paul, ¶¶2-6, attached hereto as Exhibit 1). On July 17, 2006, CCA responded to Plaintiff's First Set of Interrogatories, objecting to Interrogatory number two and detailing the reasons therefore as provided by Mr. Paul. (*See* CCA's Responses to Plaintiff's First Set of Interrogatories, attached hereto as Exhibit 2).

With respect to Plaintiff's request for the names of the inmates housed in Medical 82 on December 29, 2003, CCA maintains a Correction Officer's Logbook, in which all relevant and pertinent activity for each shift is contemporaneously recorded and may include the names of these inmate. Mr. Paul attempted to locate the Officer's Logbook as well as a census of the inmates on numerous occasions. (*See* Exhibit 1 at ¶9). Although Mr. Paul did not locate the logbook or the census on his five separate searches, he was able to locate the duty roster, which

CCA provided to Plaintiff. (*Id.*)

Unfortunately, during Mr. Paul's search, he noted that a water leak above the archives, where the logbook and roster would be located, had destroyed many records beyond salvage. (*See* Exhibit 1 at ¶11). In fact, the water leak was so extensive, that the affected records had to be removed due to extensive mold growth. (*Id.* at ¶12). The records that were removed could not be recorded because the water damage made their identity indiscernible. (*Id.*). Photographs depicting the type of damage are attached to Mr. Paul's affidavit as Attachment A.

CCA advised Plaintiff's counsel on three occasions that CCA does not maintain former inmate files, that District of Columbia Department of Corrections does and that we were in the process of diligently searching for any other hard copy documentation as to the list of inmates but as of yet could not locate same. (*See* electronic correspondence from Michael Giardina to Sherman Robinson dated September 28, 2006, attached hereto as Exhibit 3; *see also* October 16, 2006 letter to Sherman Robinson from Shannon Ivanyi, attached hereto as Exhibit 4).

Accordingly, CCA has repeatedly advised Plaintiff that it does not maintain former inmate files in which the her requested information of DCDC No., last known address, current whereabouts and/or parole officer name. Plaintiff must obtain that information from the District of Columbia Department of Corrections or the Bureau of Prisons. Furthermore, with respect to the list of inmates in Medical 82, CCA has made a diligent search but due to circumstances beyond its control, cannot obtain that information.

**B.**      **Interrogatory Number 3 – CCA Has Provided Plaintiff A Diagram Of Medical 82.**

The second interrogatory to which Plaintiff seeks CCA's response is to indicate by diagram or otherwise the relative location of every inmate's cell in Medical 82 on December 29, 2003 in relation to Michael Farrar's cell and the nurse's station. As stated above, CCA has diligently attempted, on numerous occasions, to compile the list of inmates that were housed in Medical 82 with Michael Farrar on December 29, 2003. (*See* Exhibit 1 at ¶¶8-12). However, due to extraordinary circumstances, it cannot.

With respect to the request for a diagram, CCA provided Plaintiff with an actual photograph of the Medical 82 control panel which illustrates the location of the cells, as well as individual photographs of the Medical 82 housing unit. (*See* Exhibit 1 at ¶9). In addition, during the deposition of CCA employee Sgt. Antoine Cobb, Plaintiff's counsel had him identify various areas of the housing unit, including the nurse's station, on the photograph of the control panel. (*See* Deposition Transcript of Antoine Cobb attached hereto as Exhibit 5 at pp. 21-27, 32-39 and photograph of Control Panel, attached as Exhibit 1, to Exhibit 5).

Thus, CCA has responded fully and legally to Plaintiff's Interrogatory number three.

**C.**   **Interrogatory Number 9 – CCA/CTF Has Advised Plaintiff On Numerous Occasions That It Is Not Responsible For Any Medical Records Of Inmates And That Such Information Must Be Obtained From Medical Care Personnel.**

The final interrogatory to which Plaintiff seeks to compel an answer from CCA is number 9 which requests names of inmates who have "suffered losses in bodily functions or senses while being housed at the CTF for the past 10 years" including deaths and whether civil charges were brought (allegations, court, docket number, judge and outcome). CCA objected to this interrogatory as overly broad, unduly burdensome and information that is not maintained in the ordinary course of business of CCA. (*See* Exhibit 2). Furthermore, the release of such information, even if CCA did maintain it, would clearly violate HIPAA as it would contain confidential information related to the inmates.

Plaintiff's request for a list of all lawsuits is clearly overbroad and creates a burden that simply cannot be outweighed by its value. First, Plaintiff's counsel himself can search the court docket to determine what lawsuits have been filed against CCA/CTF. Second, because CCA/CTF is not responsible for the medical aspect of the facility, any list CCA/CTF could compose would not cover such claims. Finally, CCA has not been responsible for the operation of CTF for the past 10 years.

With respect to the specific medical/injury/death information, CCA specifically advised Plaintiff's counsel both in the October 5th meeting in Washington D.C. and in the October 16

letter following that meeting that the information requested in interrogatory number 9 was not information that CCA/CTF Corrections Officer Personnel would have. Indeed, Ms. Ivanyi specifically advised Plaintiff's counsel on October 5, 2006 that "CCA/CTF personnel have nothing to do with the medical treatment or issues surrounding any of the inmates on Medical 82. CCA/CTF Corrections Officer Personnel deal only with the corrections aspect of the inmates and deal only with the care, custody and control of those inmates as it relates to corrections." (*See* Exhibit 4). CCA has repeatedly advised Plaintiff that it does not maintain any medical record, document, logbook, etc. but that such information is maintained solely by the medical care agency with whom the District of Columbia Department of Corrections contracts.

**D.**    **Because CCA Has Provided Full And Complete Responses To Plaintiff And Has Done So On Numerous Occasions, Plaintiff's Motion Is Not Well Taken And CCA Requests Sanctions For Same.**

As demonstrated by the exhibits attached to CCA's opposition, CCA has fully and legally complied with its duty to provide complete and thorough responses and/or objections to Plaintiff's Interrogatories. Despite CCA's diligent efforts at not only trying to locate certain material, but their constant advisories to Plaintiff's counsel that it does not maintain the requested information, Plaintiff filed her Motion to Compel. This Court advised all parties that discovery motions are to be utilized very conservatively. Indeed, this Court apprised counsel that "if the court is called upon to resolve such a motion, the losing **attorney** (not the principal) will be sanctioned pursuant to Fed. R. Civ. P. 37(a)(4). (*See* May 19, 2006 Scheduling and Procedures Order). CCA submits that Plaintiff's Motion is not well founded based on the foregoing argument and respectfully requests this Court sanction Plaintiff pursuant to the above order for filing same.

Dated: November 21, 2006

s/ Daniel P. Struck
Daniel P. Struck, (D.C. Bar No. CO0037)
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone: (602) 263-7323
Facsimile: (602) 200-7811

Kevin L. Newsome, Bar No. 439206
Megan S. Ben'Ary, Bar No. 493415
LECLAIR RYAN, A PROFESSIONAL CORPORATION
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314
Telephone: (703) 684-8007
Facsimile: (703) 684-8075

Attorneys for Defendant
Corrections Corporations of America, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2006, I electronically transmitted the attached document to the Clerk of the United States District Court for the District of Columbia using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Barry McCoy Tapp | suwon4@aol.com |
| Sherman Bernard Robinson | sherman67@comcast.net |
| Daniel P. Struck | dstruck@jshfirm.com |
| Kelvin L. Newsome | kelvion.newsome@leclairryan.com |
| Megan Starace Ben'Ary | megan.benary@leclairryan.com |
| Rebecca Everett Kuehn | rkuehn@ftc.gov |
| Leo A. Roth, Jr. | lroth@braultgraham.com |
| Theresa Ann Rowell | Theresa.Rowell2@dc.gov |
| Ronald George Guziak | rguziak@bktc.net |

s/ Carol S. Madden

1714120.1

- 6 -