# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Yvette Bryant

Plaintiff,

v.

Corrections Corporation of America, et. al.

Defendants.

Case No.: 06-CV-00446 (RMC)

## AFFIDAVIT OF DONALD HOWARD PAUL

I, DONALD HOWARD PAUL, being duly sworn according to law, upon my oath, depose and say:

1.    I was born in Memphis, Shelby County, Tennessee on October 2, 1954, therefore making me 52 years of age.

2.    I have been employed by Corrections Corporation of American (hereinafter "CCA") since June, 1998. I currently am the Internal Affairs Investigator at the Correctional Treatment Facility ("CTF") operated by Corrections Corporation of America in Washington, D.C.

3.    I have personal knowledge of the matters contained herein and further make this affidavit in support of Defendant, Corrections Corporation of America's Response to Plaintiff's Motion to Compel Defendant Corrdectional [sic] Corporation of America to Provide Additional Answers to Interrogatories and Production of Documents.

4.      I assisted with the preparation of and verify as true and accurate Defendant Corrections Corporation of America, Inc.'s Response to Plaintiff's First Set of Interrogatories to CCA and Defendant Corrections Corporation of America, Inc.'s Response to Plaintiff's First Production of Document Request to Defendant Corrections Corporation of America, both of which are dated July 17, 2006.

5.      In response to Interrogatory No. 2, I advised that CCA does not possess the name, DCDC No., transfer location, custody supervisor, or parole officer.  Pursuant to the terms of CCA's contract with the District of Columbia, CCA is not responsible for determining release dates or tracking inmates after they are released.  Whenever an inmate is released from CTF or is transferred to another facility, all records pertaining to the inmate are transferred to the D.C. Department of Corrections or the Bureau of Prisons.  Thus, the last address, known to any CCA employee for any former inmate at CTF is the physical address of the facility itself.

6.      Moreover, although CCA does have access to the D.C. Department of Corrections Inmate Management System, the system does not permit us to make a relational query of all records.  That is, while it is possible for us to look up an inmate's former dates of detention and assigned housing unit when the inmates name and DCDC No. are input into the system, we are unable to mine the data to generate a list of inmates housed in the Medical-82 housing unit on the dates in question.

1712721.1

7.    In response to Interrogatory No. 3, as counsel's request, I took photographs of the Medical-82 control panel which illustrates the location of the cells, as well as photographs of the Medical-82 housing unit. Moreover, I provided a narrative description of the layout of the unit, which counsel included in the discovery response. However, without being able to determine the names of the inmates housed in the Medical-82 housing unit on the dates in question, we are unable to associate any inmate name with a particular cell location.

8.    At counsel's request, I was instructed to search for any physical documents which are normally maintained by CCA, from which the identity and cell location of any of the inmates in the Medical-82 housing unit during the dates in question. To my knowledge, there are two such documents, which may exist. The first is the housing officer's logbook for the dates in question. Since the housing officer normal records inmate movements out of the housing unit for court appearances, outside medical consultations and treatment, recreation, and visitation, I expect that the name and DCDC No. of some of the inmates in the housing unit could be inferred from the logbook. Additionally, CTF takes a 1AM Census of all inmates, which specifies the cell assignment of each inmate on the date in question. Prior to preparation the CCA's discovery responses, I advised counsel that attempting to surmise this information from these documents would be unduly burdensome both in terms of the man-hours to attempt to locate the documents, as well as the man-hours to review the handwritten logbook to identify only a portion of the inmates in the housing unit.

-3-

9.      On at least five occasions, April 26, 2006, June 23, 2006, August 8, 2006,

August 14, 2006 and September 11, 2006, counsel instructed me to take the time to search for

the Medical-82 housing officer's logbook which would cover the time period in question.

Additionally, counsel requested that I search for the 1AM inmate census report for December 29,

2003 on June 23, 2006, August 8, 2006 and September 27, 2006.

10.     Since I received that request, I have spent more than forty (40) hours personally

searching the security archives in an effort to locate the responsive logbook and census report.

Most recently, I have spent substantial blocks of time in the security archives on September 19,

2006, September 27, 2006, September 28, 2006 and September 29, 2006. On September 19,

2006 I was successful in locating the shift packet which Plaintiff had requested identifying all

officers on duty during the shift in question. I immediately provided this information by

facsimile and mail to counsel, who, I understand, produced it to Plaintiff.

11.     In the process for searching for the inmate logbook, I noticed that a water leak

from the inmate showers on the floor above the archives had damaged and destroyed many

records beyond salvage. Attachment A hereto are photographs I took on 17 Nov. 2006 ,

showing the damage to the files.

12.     Additionally, I have since learned that due to extensive mold growth resulting

from the emulsification of many documents, those unsalvageable documents were removed and

destroyed. The condition of those documents was so poor that the identity of the documents in

question could not be discerned, and thus were not recorded.

-4-

13.    In response to Interrogatory No. 9, I advised counsel that CCA does not maintain a list of names, DCDC Nos., age, and/or cause of death for inmates who die or suffer permanent injury while housed at CTF.  Additionally, CCA has only been operating CTF since 1998, and thus has no records of any sort regarding any incident at CTF before that date.

14.    I hereby attest that despite an exhaustive search, the Medical-82 housing officer's logbook and 1AM inmate census for the dates in question cannot be located.  I believe that they were destroyed by the extensive water damage to the CTF security archives.


FURTHER AFFIANT SAYETH NAUGHT.


_Donald Howard Paul_
Donald Howard Paul

WASHINGTON                    )
                              ) ss.
DISTRICT OF COLUMBIA          )


SWORN AND SUBSCRIBED before me this 17 day of NOVEMBER, 2006, by Donald Howard Paul

_Phoenix C. Ishmon_
Notary Public

My Commission Expires:    PHOENIX C. ISHMON
                          NOTARY PUBLIC DISTRICT OF COLUMBIA
                          My Commission Expires July 31, 2011

1712721.1

# ATTACHMENT A

















# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YVETTE BRYANT, Personal Representative of the
Estate of MICHAEL FARRAR,

        Plaintiff,

    v.

CORRECTIONS CORPORATION OF AMERICA,
INC., et al.

        Defendants.

Civil Action No. 05-2089 (CKK)

## DEFENDANT CORRECTIONS CORPORATION OF AMERICA, INC.'S RESPONSE
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO CCA

Defendant Corrections Corporation of America, Inc. ("CCA"), through undersigned

counsel, submits the following response to Plaintiff's First Set of Interrogatories to CCA:

1.     As to the person preparing these responses please identify you [sic] by name, title,

address, and duration of employment relationship with defendant.

**Response:**

Defendant CCA objects to this interrogatory to the extent that it calls for disclosure of

attorney-client communications and attorney work product related to the factual investigation of

the events underlying this litigation. Without waiving those objections, these responses were

prepared by undersigned counsel, with input from Don Paul, Internal Affairs Investigator at

CCA-CTF. Mr. Paul may be contacted through undersigned counsel. He has been employed by

Defendant CCA since June 22, 1998.

2.    Please provide the name, DCDC No., [sic] last known address, of all inmates housed on the medical ward where Michael Farrar was housed on December 29, 2003; (b) As [sic] part of your answer, if the inmate has been transferred to another penal facility, indicate his current whereabouts including the name, address, and telephone number of the institution where the inmate is in custody, and the name of the prison official to contact in order to arrange an interview; (c) If [sic] the inmate has been released from custody, provide the name of the inmate's parole officer and/or the name and address of the person that the inmate has designated to be notified in the event of emergency or other data sources employed by this Defendant to locate and [sic] inmate.

**Response:**

Defendant CCA objects that this interrogatory is over-broad, calls for the production of information not retained in the normal course of business, is unduly burdensome, calls for the disclosure of attorney work product relating to litigation strategy and is not reasonably calculated to lead to this discovery of admissible evidence.  Without waiving the foregoing objections, Defendant CCA, pursuant to the terms of its contract with the District of Columbia, is not responsible for tracking former inmates after their release.  Whenever an inmate is released or relocated from the Correctional Treatment Facility, all records pertaining to the inmate are transferred to the District of Columbia Department of Corrections.  The last address for all inmates known to Defendant CCA is the facility itself at 1901 E. Street, S.E., Washington D.C. 20003. Moreover, Defendant CCA does not have any mechanism to simply "look up" the names of all former inmates housed in a particular unit on a given past date.  To the extent the identity of any former inmates housed in the Medical-82 unit is known, it is contained in the documents disclosed by Defendant CCA.

3.     Indicate by diagram or other descriptive model or index, the relative location of the cell of every inmate on the medical ward to the cell of Michael Farrar and the nurse's station during the night and morning hours of December 28 and 29, 2003.

**Response:**

Defendant CCA objects that this interrogatory is duplicative, is unduly burdensome and calls for the production of information not maintained in the ordinary course of business. Defendant CCA herewith is producing photographs of the Master Control panel for the Medical-82 housing unit (which illustrates the layout of the unit) as well as photographs of the unit. The nurses' station (not shown) is located at the intersection of the two hallways, across from the housing officer's desk, which is visible in the photograph of the sliding gate. The gate is located near the offset center point of the two wings of the housing unit. For the reasons stated in response to Interrogatory #2, Defendant CCA is unaware of the identity of other inmates housed on Medical-82 during the night and early morning hours of December 28 and 29, 2003.

4.     Provide the current names, title, and staff assignment on all correctional officers or support staff, and, if known, all medical personnel, on duty on the night and morning of December 28-29, 2003 when Michael Farrar was found in his cell unconscious; (b) If [sic] the correction officer or medical personnel is no longer employed by the CCA (or CCHPPS [sic]) please provide the last known mailing address and telephone number of that witness; (c) For [sic] a period of 24 hours before and after the death of Michael Farrar, identify the specific physician and specific nurse(s) if known, that were responsible for his care and treatment.

**Response:**

Defendant CCA objects that this interrogatory is over-broad, is duplicative, is irrelevant, and calls for the disclosure of attorney-client communications and attorney work product related to personnel decisions. As to the identity of those CCA employees directly involved in the occurrence, Defendant

CCA directs Plaintiff to see the witnesses identified in Defendant Corrections Corporation of America, Inc's Initial Disclosure statement, and the documents disclosed therewith. All CCA personnel, past or present, should be contacted through undersigned counsel. Pursuant to the terms of its contract with the District of Columbia, CCA does not provide any medical care to inmates and thus employs no medical personnel at the Correctional Treatment Facility ("CTF"). Aside from and information disclosed by counsel for CCHPS, Defendant CCA is unaware of the employment history, address or telephone number of any CCHPS employee.

     5.     Please describe in full detail the communication system that was in place that allowed inmates as Michael Farrar, and those similarly situated to contact medical personnel from their cell or place of confinement; (b) Indicate [sic] if the communication system was operative on December 28-29, 2003; (c) If [sic] the system was not operative, please explain when it became inoperative and when was it repaired.

**<u>Response:</u>**

Defendant CCA objects to this interrogatory to the extent it is irrelevant, vague as to what constitutes "operative", is overbroad, calls for the disclosure of attorney-client communications, calls for the disclosure of attorney work product relating to litigation strategy, and calls for speculation. In each cell in the Medical-82 unit, there is a medical intercom which rings directly to the nurses' station. Photographs of the interior of a cell in the Medical-82 housing unit, including the medical intercom are produced herewith. Upon information and belief, this system constitutes medical equipment which is maintained by CCHPS. Upon information and belief, this system was operational on December 28-29, 2003. Additionally, inmates in the Medical-82 unit are seen during frequent nursing rounds by CCHPS personnel.

6.    Provide the name, DCDC Number and present whereabouts or address of every inmate or correctional officer or any other person who was either interviewed and /or [sic] provided a written statement. (b) As part of your answer, identify all persons who conducted interviews and provide a copy of the statements that were obtained.

**Response:**

Defendant CCA objects that this interrogatory is overbroad, is duplicative, and calls for the disclosure of attorney-client communications and attorney-work product. Defendant CCA directs Plaintiff to see the Incident Statement produced with its Initial Disclosure Statement which attaches the statements of all witnesses to the occurrence. All employees listed should be contacted through respective counsel. Defendant CCA has no further information pertaining to the whereabouts of the inmate who was interviewed and whose account was deemed to be not credible.

7.    If you are contending that someone other than CCA was responsible for the death of Michael Farrar, please indicate the other party and describe every significant basis for liability of the other person or party.

**Response:**

Defendant CCA objects to this interrogatory to the extent that it calls for the disclosure of attorney-client communications, attorney work product related to litigation strategy, and calls for speculation as to actions taken by other defendants and non-parties. This interrogatory is premature. Not all facts have been disclosed nor all documents produced. Moreover, discovery is not complete. As such, this interrogatory answer will be supplemented upon the conclusion of discovery. Notwithstanding the above objections, Defendant CCA is not responsible for the medical care of inmates detained at Correctional Treatment Facility. All medical observation and care, including dietary decisions are made by employees of the Center for Correctional

Health and Policy Studies, Inc, according to policies promulgated by CCHPS. Moreover, Michael Farrar's death may not have been caused by anything other than the natural progression of his medical conditions or his informed decision(s) to ignore his doctors' advice.

8.      Please state as to each and every person known to any agent or employee of the defendant to have seen, heard or known about the occurrence of other facts that were related to the termination of Decedent's life, the name, address, physical description and relationship of that witness to defendant; the location where each person was at the time he or she saw, heard or learned about the occurrence; (c) the substance of all information or knowledge about the alleged occurrence known to each such person, and (d) the manner in which that information was initially obtained, received, recorded and/or conveyed to others.

**<u>Response:</u>**

Defendant CCA objects to this interrogatory to the extent that it is overbroad, is unduly burdensome, calls for the disclosure of attorney-client communications and attorney work product, and is not reasonably calculated to lead to the discovery of admissible evidence. To the extent that such relevant, non-privileged information exists, it has already been disclosed in Defendant Corrections Corporation of America, Inc.'s Initial Disclosure Statement and the documents disclosed therewith.

9.      Provide the names, DCDC Numbers, age, and cause of death of all inmates who died or who suffered losses in bodily functions or senses while being housed at the CTF for the past 10 years; (b) As part of your answer, indicate whether the deaths of [sic] loss in bodily functions resulted in the filing of civil charges against the CCA, COWS or the District Government: (c) Of [sic] those deaths or loss in body functions that resulted in the filing of civil lawsuits, please describe the specific nature of the allegations made in the complaint, the party against whom allegations were made, the court,

the docket number, and the judge. (d) Of those cases in which lawsuits were filed, indicate the final outcome (in terms of monetary award) by verdict or settlement, the date, and the attorney(s) representing the inmate(s).

**Response:**

Defendant CCA objects that this interrogatory is vague as to the definition of "COWS," is vague as to what constitutes a loss of "bodily functions or senses," is overbroad, is unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, calls for the disclosure of attorney-client communications and attorney work product prepared in anticipation of litigation, calls for the disclosure of information not normally maintained in the ordinary course of business, and calls for disclosure of information in the public record to which Plaintiff has as much access as Defendant CCA.

10.    Provide the name, address and title of the monitor assigned by the District to assure that CCA was adequately performing its obligations under the contract from 1998-2004; (b) As [sic] part of your answer, indicate in detail the manner in which the monitoring functions were performed. (c) As    part of your answer, provide all written description of the position, responsibilities and functions of the monitor as well as all reports provided by the monitor to the District and others from 1998 through 2004.

**Response:**

Defendant CCA objects to this interrogatory to the extent that it is unduly burdensome, calls for speculation, calls for the disclosure or attorney-client communication and attorney work product prepared in anticipation of possible litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Upon information and belief, the Contract Monitors have been Regina Gilmore and Barbara Hart. The Office of the Contract Monitor is located within the confines of the Correctional Treatment Facility at 1901 E Street, S.E., Washington, D.C. 20003.

1609068.2

Pursuant to its contract with District of Columbia, the Contract Monitor is a representative who is appointed and paid for by the District of Columbia to "be the official representative of the District with respect to matters related to the Operator's compliance with the terms" of the contract and the delivery of services required by the contract. Since the Contract Monitor is an employee of the District of Columbia, parts (b) and (c) of this interrogatory are best directed towards the District of Columbia.

11.    Please describe in detail the special diet and special monitoring, if any, that Michael Farrar had been prescribed because of his diabetes and end-stage renal disease. (b) As part of your answer, provide copies of such diets.

**Response:**

Defendant CCA objects that this interrogatory to the extent it is vague as to what constitutes "special monitoring," calls for speculation, calls for the disclosure of attorney-client communications and calls for the disclosure of attorney-work product relating to litigation strategy. Without waiving the foregoing objections, pursuant to it's contract with the District of Columbia, CCA does not provide any medical care, including dietary instructions or "special monitoring" to inmates based solely on their medical conditions. Upon information and belief, any and all such dietary orders or "special monitoring" is ordered and, in the case of "special monitoring," is completed by employees of the Center for Correctional Health and Policy Studies, Inc, who is the entity best suited to respond to this interrogatory.

Dated: July 17, 2006

By: _____

Daniel P. Struck, (D.C. Bar No. CO0037)
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone:     (602) 263-7323
Facsimile: (602) 200-7811

Kevin L. Newsome, Bar No. 439206
Megan Starace Ben'Ary, Bar No. 493415
LECLAIR RYAN, A PROFESSIONAL
CORPORATION
225 Reinekers Lane
Suite 700
Alexandria, Virginia 22314
Telephone:     (703) 684-8007
Facsimile: (703) 684-8075

Attorneys for Defendant
Corrections Corporations of America

1609068.2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Defendant Corrections Corporation of America, Inc.'s Response to Plaintiff's First Set of Interrogatories to CCA was mailed, first-class postage pre-paid, this 17th day of July, 2006, copies to:

Sherman Robinson, Esq.
LAW OFFICE OF SHERMAN ROBINSON
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
*Counsel for Plaintiff*

Barry Tapp, Esq.
14662 Cambridge Circle
Laurel, MD 20770
*Counsel for Plaintiff*

Leo Roth, Esq.
BRAULT GRAHAM, LLP
110 South Washington Street
Rockville, MD 20850
*Counsel for Defendant Center for Correctional Health and Policy Studies, Inc.*

Teresa Rowell, Esq.
OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
*Counsel for Defendant District of Columbia*

Ronald G. Guziak, Esq.
BONNER KIERNAM TREBACH & CROCIATA, LLP
1233 20th Street, N.W., 8th Floor
Washington, D.C. 20036
*Counsel for Defendant DaVita Corporation*

1609068.2