# EXHIBIT 3

## SHANNON IVANYI

**From:** MICHAEL GIARDINA
**Sent:** Thursday, September 28, 2006 9:58 AM
**To:** 'Sherman67@comcast.net'
**Cc:** SHANNON IVANYI
**Subject:** RE: E-mail to Shannon Ivanyi dated 9/28

**Attachments:** Bryant.pdf

I apologize for neglecting to attach the file. Here it is:



Bryant.pdf (1 MB)

*Mike*

Michael N. Giardina, CP
Certified Paralegal
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
602.263.7321
602.651.7535 (fax)

This electronic mail message, and any attachment, is confidential and may contain privileged information. This message is intended only for the use of the individual or individuals named above. If you (the reader) are not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that you may not review, disseminate, distribute, print, use in any way, copy or disclose to anyone the message or any information contained in this message, including attachments. If you have received this in error, please immediately call the originator at 602-263-1700 and delete the message from your system. Thank you very much.

**From:** MICHAEL GIARDINA
**Sent:** Thursday, September 28, 2006 9:13 AM
**To:** 'Sherman67@comcast.net'
**Cc:** SHANNON IVANYI
**Subject:** E-mail to Shannon Ivanyi dated 9/28

Mr. Robinson,

Ms. Ivanyi is otherwise engaged this morning and asked that I respond to your e-mail.

Please find attached a PDF file containing CCA's Interrogatory Nos. 13-14, as well as the post assignments for the third shift on December 28, 2003. The third shift runs from 10:00 PM until 6:00 AM, covering the time of the incident. These were only recently located in the achieves, and a search for the post assignments for other shifts during the period in question continues. Defendant CCA will be serving you shortly with their First Supplemental Response to your request for production, which will contain bates stamped copies of the best available copies of these documents.

As you have been advised, Defendant CCA does not maintain copies of inmate files once they have been released from custody or transferred to another facility. Moreover, as far as we are aware the inmate management system is not an open database which permits us to generate a historic list of all detainees in a particular housing unit on a given date.

Rather, it is closed, to the extent that if we know an inmates DCDC No., we can identify the dates of his detention and last assigned housing unit. As with the post assignments, our client has been diligently searching for hard copy documentation of the inmates in the housing unit on December 29, 2003 since July. To the extent any such hard copy records exist, or other records which would permit someone to reasonably infer the identity of other detainees in the Medical-82 housing unit on the date in question, our client is continuing to search for those documents as well.

Once we receive any other these other documents from our client, we will promptly provide supplemental discovery responses.

## *Mike*

Michael N. Giardina, CP
Certified Paralegal
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
602.263.7321
602.651.7535 (fax)

This electronic mail message, and any attachment, is confidential and may contain privileged information. This message is intended only for the use of the individual or individuals named above. If you (the reader) are not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that you may not review, disseminate, distribute, print, use in any way, copy or disclose to anyone the message or any information contained in this message, including attachments. If you have received this in error, please immediately call the originator at 602-263-1700 and delete the message from your system. Thank you very much.

# EXHIBIT 4

 JONES, SKELTON & HOCHULI, P.L.C.

**DANIEL P. STRUCK**
TELEPHONE: (602) 263-7323
FAX: (602) 200-7811
E-MAIL: DSTRUCK@JSHFIRM.COM

**SHANNON M. IVANYI**
TELEPHONE: (602) 263-1708
FAX: (602) 200-7860
E-MAIL: SIVANYI@JSHFIRM.COM

2901 NORTH CENTRAL AVENUE
SUITE 800
PHOENIX, ARIZONA 85012
PHONE: (602) 263-1700
FAX: (602) 263-1784
WWW.JSHFIRM.COM

October 16, 2006

Sherman Robinson, Esq.
5535 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C. 20015

> Re:  *__Michael Farrar (Yvette Bryant) v. Corrections Corporation of America__*
> **Cause No. 1:05-cv-02089-CKK**

Dear Mr. Robinson:

This is to follow up on our discussion after the depositions that occurred on October 5th regarding your letter to Mr. Struck dated October 3, 2006. As I advised you at that time, with respect to your request for information regarding all inmates on Medical 82 at or around the time period of December 28/29 of 2003, we are trying to locate that information but have been unsuccessful as of yet. We will continue to try and locate that information and as soon as we receive it will forward same on to you.

With respect to Interrogatory No. 9 which requests names and related information of inmates who have died or suffered loss of bodily functions, those are documents that CCA/CTF Corrections Officer Personnel would not have. That is information which you need to obtain from the Correctional Health Services Policy Studies.

With respect to your document request No. 1 which requests the institutional file of Michael Farrar, that has been provided to you in our Supplemental Disclosure Statement and as such, it is my understanding that you no longer have a concern regarding that particular request. Finally, with respect to your document request No. 7 which requests copies of court orders relating to Michael Farrar's medical treatment, again please be advised that CCA/CTF Corrections Officer Personnel do not have this type of information.

# JONES, SKELTON & HOCHULI, P.L.C.

Sherman Robinson
September 18, 2006
Page 2


     As I advised you on October 5th, CCA/CTF personnel have nothing to do with the medical treatment or issues surrounding any of the inmates on Medical 82. CCA/CTF Corrections Officer Personnel deal only with the corrections aspect of the inmates and deal only with the care, custody and control of those inmates as it relates to corrections. Accordingly, any documents related to the medical care and treatment of Mr. Farrar will need to be obtained from the appropriate entity, here, Correctional Health Services Policy Studies and/or DaVita. Should you have any further questions, please feel free to call me.

                          Sincerely,

                          Daniel P. Struck
                          Shannon M. Ivanyi
                          For the Firm

DPS/SMI:cas

# EXHIBIT 5

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

1

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3    - - - - - - - - - - - - - - - X

 4    YVETTE BRYANT                    :

 5    PERSONAL REPRESENTATIVE          :

 6    of the Estate of                 :

 7    MICHAEL FARRAR,                   :    Case Number:

 8              Plaintiffs,            :    1:05cv2089

 9    v.                               :

10    CORRECTIONS CORPORATION OF       :

11    AMERICA, et al.,                 :

12              Defendants.            :

13    - - - - - - - - - - - - - - - X

14              Thursday, October 5, 2006

15              Washington, D.C.

16         Deposition of ANTOINE CURTIS COBB, a

17    witness, was called for examination by counsel

18    for the Plaintiffs, in the above-entitled

19    matter, pursuant to notice, taken in the Office

20    of the Attorney General, located at 441 4th

21    Street, N.W., Washington, D.C.  20001, beginning

22    at 10:33 a.m., before Leanne M. Krivonak, CVR,
```

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

2

1    CCR, a court reporter and notary public for the

2    District of Columbia.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                                   10/5/2006

21

1   going straight ahead of you and you have a tier

2   that's going -- there's a tier in front of you

3   and there's a tier to the left of you.  The

4   officer's desk is there so you can see the tier

5   on your left and the tier in front of you.

6        Q   Captain, I show you what has been

7   marked as Exhibit Number 1.  It appears to be a

8   schematic drawing of Medical 82 that was

9   provided to me by CCA.

10                  (Whereupon, the aforementioned

11                  document was marked Exhibit

12                  Number 1 for identification.)

13          Does that diagrammatically represent a

14   rather accurate layout of the rooms on that

15   board that you referenced?

16          MS. IVANYI:  Objection to form.

17          That's not a schematic drawing; that's

18   a photograph.

19          MR. ROBINSON:  It's a photograph of a

20   schematic drawing.

21          BY MR. ROBINSON:

22      Q   But in any event, look at Exhibit

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                                              10/5/2006

22

1    **Number 1 and tell me if you recognize it and**

2    **does it accurately represent the layout of all**

3    **floor plans?**

4         A    Well, this is -- basically the panel

5    box that controls the doors on the housing unit.

6    These are cell doors right here and right here

7    are the different buttons that we open the cell

8    doors with.

9         MR. ROTH:  Captain, do you mind if I

10   come down here so I can see where you're

11   pointing at.

12        BY MR. ROBINSON:

13        Q    **Now, the cell door -- could you go**

14   **slower and repeat that, please, while Mr. Roth**

15   **is --**

16        A    This is the area right here.

17        Q    **And the area for what?**

18        A    Where the doors are.  They're right

19   here with the numbers.  There is a number right

20   here going down and those are the cell doors.

21        (Indicating.)

22        Q    **So looking at the scheme, there's 18**

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America

10/5/2006

23

1    separate cells.

2         MS. IVANYI:  Objection to form with

3    respect to which direction.

4         BY MR. ROBINSON:

5    Q    With respect to -- could you point out

6    the direction of the individual room on Medical

7    18 (sic).  Could you just point to it?

8    A    As far as what's -- a particular cell

9    that you're looking for?

10   Q    No, I'm just looking for all the rooms.

11   We just want to designate exactly how all the

12   rooms are.

13   A    Well, I really can't per se -- what I

14   mean if I can go off the top of my head, I

15   believe that's cell one, cell two and cell

16   three.

17   Q    Okay.  Now how do you -- now is -- now

18   you indicated where cell one is.  Could you just

19   put a one into that location?

20   A    I can write on this.  Put a one in this

21   location?

22   Q    Yes, whatever cell is.  You might just

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                          10/5/2006

24

1    want to draw the arrow out to where it's clear

2    so we can see where -- then draw an arrow and

3    just put one and that would be it.

4         A    (Witness complies with the request.)

5         Q    Okay.  Thank you.

6              Now where is the gate providing access

7    to that tier, or to that level?  Is there a --

8         A    It's not a gate; it's a door, a regular

9    open door.  A closed door, not a gate.

10        Q    And is the area where one is the

11   beginning of Medical 82?

12             MS. IVANYI:  Objection to form.

13             BY MR. ROBINSON:

14        Q    If you know.

15             Is the area where one begins, is this

16   all considered Medical 82 or are there other

17   aspects and other sides to Medical 82?

18        A    That whole -- this whole area is

19   Medical 82.

20        Q    Okay.  Is that area beginning at -- one

21   cordoned off -- in any extent?  Is it secure?

22   Is there a cell block?   I mean, is there a gate

ANTOINE CURTIS COBB

25

1    or cell that cordons off that area from the

2    other areas?

3         A    No, sir.

4         Q    Okay.

5         A    It's a door.  That door that you just

6    push open.

7         Q    Now are there other corridors on

8    Medical 82 where inmates are housed?

9         A    As far as?

10        Q    You have one to -- you have where one

11   is.

12        A    Uh-huh.

13        Q    You have one and you have rooms of

14   inmates.  Are there other locations on 82 where

15   additional inmates would be housed?

16             MS. IVANYI:  Objection to form.

17             THE WITNESS:  Well, --

18             BY MR. ROBINSON:

19        Q    Go ahead.

20        A    Well, just like I explained to you

21   before --

22        Q    Yes.

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

26

1    A    -- the officer's desk sits right here

2    and you have a tier that's here and you have a

3    tier that's there.

4    **Q    Could you log -- by two where the**

5    **officer's desk is, the correctional officer's**

6    **desk.**

7    A    In this form, from this diagram right

8    here?

9    **Q    Yes, sir.  If you could.**

10    MS. IVANYI:  I'm going to object to the

11    form.  First of all, I think it's -- I can't

12    make out -- this is a drawing of the actual

13    layout of Medical 82 or is this just a panel,

14    control panel, where she opens the doors to the

15    cells?

16    THE WITNESS:  This is where she uses

17    the control panel where she opens the door to

18    the cells, but the cells here are where the

19    doors are.

20    MS. IVANYI:  Okay.  But my question is

21    this an actual drawing of the layout of Medical

22    82?

ANTOINE CURTIS COBB
Bryant v. Corrections Corporation of America                                        10/5/2006

27

1              THE WITNESS:  Yes, it is.

2              MS. IVANYI:  Okay.

3              BY MR. ROBINSON:

4        Q    **Now looking at Exhibit Number 1 can you**

5    **locate where the correctional officer's desk is?**

6        A    That's it.

7        Q    **Could you locate that by drawing a line**

8    **on the side and putting number two, wherever**

9    **that is.**

10       A    Right here.  (Indicating.)

11       Q    **Could you make that a little harder --**

12   **a little delineated --**

13             MS. IVANYI:  You know what, Sherman,

14   I've got a red pen.  Would that help?

15             MR. ROBINSON:  That would be wonderful.

16   Thank you.

17             MR. ROTH:  Can you show me where you're

18   pointing to while you're doing it.

19             MR. ROBINSON:  Sure.

20             (Witness complied with the request.)

21             MR. ROBINSON:  Thank you.

22             I'm off the record.

32

1    **Exhibit 1.**

2              THE REPORTER:   Is there also an Exhibit

3    Number 7?   I thought I marked Exhibit 7 with

4    these.

5              (Discussion off the record.)

6         MS. IVANYI:   You want him to mark what

7    each of these exhibits --

8         MR. ROBINSON:   I just want him to tell

9    me on the drawing that --

10         MS. IVANYI:   Okay.

11         MR. ROBINSON:   And you could do it the

12    same way, just draw a little trace -- a line.

13    I'm off the record.

14              (Brief recess.)

15         BY MR. ROBINSON:

16    Q    **I'm on the record.   I show you what has**

17    **been marked as Exhibit Number 2.   Could you**

18    **describe what it is.**

19    A    Exhibit Number 2 is the crash gate, the

20    open crash gate on Medical 82.

21    Q    **And it has on it Welcome to Medical 82.**

22    A    Yes, sir.

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

33

1  Q   And it's iron bars.

2      Okay.  Could you show me where that is

3  on Exhibit Number 1?

4  A   (Witness complies with the request.)

5  Q   And for future reference you can just

6  put Exhibit 1.  You don't have to write the

7  whole thing out.  Can you make it real -- so we

8  can see it when it's photocopied.

9      MS. ROWELL:  We are off the record.

10     (Discussion off the record.)

11     MR. ROTH:  Where is the guard sitting?

12 The guard desk?

13     THE WITNESS:  The guard desk is right

14 here.

15     MR. ROTH:  So it's in front of the

16 gate?

17     THE WITNESS:  Yes, sir.

18     MR. ROTH:  The gate is behind --

19     THE WITNESS:  The gate is all behind

20 that.

21     MR. ROTH:  Okay.

22     BY MR. ROBINSON:

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                              10/5/2006

34

1        Q    All right.  Just put a little tiny

2    two -- tiny.

3        A    Right here?

4        Q    Yes, just a little tiny two?

5             MS. IVANYI:  Wherever the desk is.  I

6    don't know where the desk is.

7             THE WITNESS:   That should be right

8    here.

9             MS. IVANYI:  So, yes, that would be the

10   two.

11            MR. ROBINSON:  Okay.

12            MS. IVANYI:  And, yes, for the record

13   the white spot on Exhibit Number 1 marked with a

14   number two is where the officer's desk is

15   located.

16            BY MR. ROBINSON:

17       Q    I'm showing you what has been marked as

18   Exhibit Number 3.  Would you tell us what that

19   is.

20       A    Exhibit Number 3 is the corridor and

21   the front of the officer -- this is the corridor

22   going in front of the officer right here.

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                           10/5/2006

35

1      Q    Could you indicate in the margin and

2   draw the line again where Number 3 is.  And then

3   could you take a little piece of White-Out and

4   insert it on the scheme.

5      A    (The witness complied with the

6   request.)

7           MS. IVANYI:  And for the record there

8   is a little White Out smudge where the corridor

9   which is photographed on Exhibit Number 3 is

10  located.

11          BY MR. ROBINSON:

12     Q    I'm showing you what has been marked as

13  Exhibit Number 4.

14     A    Exhibit Number 4 is the corridor to the

15  left of the officer's desk.

16          MR. ROTH:  Can I ask a clarification,

17  please?  Going back to Number 3, is this looking

18  from the guard's desk?

19          THE WITNESS:  Yes, sir.

20          MR. ROTH:  Okay.

21          BY MR. ROBINSON:

22     Q    Could you again put the four in the

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

36

1    **White-Out spot.**

2        A    (The witness complied with the

3    request.)

4        Q    **I'm showing you what has been marked as**

5    **Exhibit Number 5.**

6        A    All right.  Exhibit Number 5, this is

7    the corridor to the showers and the dayroom

8    area.

9        Q    **And where would that be on Exhibit**

10   **Number 1?**

11       A    This would be right here, sir.

12       Q    **You're going to have to go in the white**

13   **part; and then put the five.**

14           MR. ROTH:   Where is the shower?

15           MR. ROBINSON:   Where the five is.

16           THE WITNESS:   The shower is the line --

17   this is the guard's desk, right here --

18           MR. ROBINSON:   Uh-huh.

19           THE WITNESS:   This is whole area right

20   here is the nurses station and right here from

21   the side, you go down --

22           MR. ROBINSON:   Okay.

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America

10/5/2006

37

1          THE WITNESS:  -- it's the dayroom

2     area --

3          MR. ROBINSON:  To the right of the

4     guard's desk?

5          THE WITNESS:  Yes, sir.  It's the

6     right.

7          MR. ROTH:  Okay.  Thank you.

8          THE WITNESS:  Exhibit 6 -- I do not

9     know what this is.

10          MR. ROBINSON:  Okay.

11          THE WITNESS:  And as I look at Exhibit

12     7, it looks like the inside of a cell, which

13     cell in particular I do not know.

14          BY MR. ROBINSON:

15     Q    Sure.  Now in looking -- directing your

16     attention back to Exhibit Number 1, can you

17     indicate by -- can you indicate by the Number 6

18     where the nurses' station?

19     A    Where the nurses station is?

20     Q    Yes.

21     A    A big X.

22     Q    Now would you take the Wite Out again

ANTOINE CURTIS COBB

Bryant v. Corrections Corporation of America                    10/5/2006

38

1    and make the big X?

2        A    Make a big X?

3        Q    Yes.

4            MS. IVANYI:   Where the nurses station

5    is, put an X --

6            BY MR. ROBINSON:

7        Q    And then write in there nurses station.

8        A    (Witness complies with the request.)

9            MR. ROBINSON:   Let the record reflect

10   that the Wite Out didn't work.

11           (Discussion off the record.)

12           BY MR. ROBINSON:

13       Q    Now could you write in there nurses

14   station or something close to it?

15       A    (Witness complies to the request.)

16       Q    And do you have it pulled it out to the

17   side two as to the --

18       A    Yes, I have right here -- you said

19   Exhibit 6.

20       Q    That should be Exhibit 6.

21       A    Yes, made that Exhibit 6.

22       Q    Is your six clear?

**ANTOINE CURTIS COBB**

Bryant v. Corrections Corporation of America                    10/5/2006

39

1      A    I mean, I put it right here.

2           MR. ROTH:  Is Exhibit 6 the nurses

3   station?

4           MS. IVANYI:  Yes.

5           MR. ROBINSON:  Yes.

6           THE WITNESS:  No, Exhibit 6 right here

7   is --

8           MR. ROBINSON:  No, no, I'm sorry.  We

9   can't tell what those other things are.

10          MR. ROTH:  Okay.

11          MS. IVANYI:  Yes, for the record

12   Exhibit 6 in the record is different from 6

13   which is marked on Exhibit Number 1.  They are

14   not one and the same.  The number six on

15   Exhibit Number 1 is what is known as the nurses

16   station.

17          BY MR. ROBINSON:

18      Q    Now can you look at Exhibit Number 1

19   and tell me how many doors or partitions

20   separate the nurses station from the rooms of

21   the inmates?

22      A    Which doors and partitions?

AREA/AN CONTROL PANEL

Cobb

EXHIBIT

#1

CCA-BRY 000044