Ronald G. Guziak
Bonner Kiernan Trebach & Crociata, LLP
1233 20th Street, NW
Suite 800
Washington, D.C. 20036

November 26, 2006

Re: Yvette Bryant, Personal Representative to the Estate of Michael Farrar v. Correction Corporation of America, et al.

Dear Mr. Guziak:

This report is written at your request to review my findings and medical opinions in the matter of Yvette Bryant, Personal Representative to the Estate of Michael Farrar v. Correction Corporation of America, et al. Specifically, you have asked me to review the records described below and to render a medical opinion as to whether there were any deviation(s) in care on the part of the dialysis provider, Gambro/ Davita Healthcare that would have contributed to Mr. Farrar's death.

First, I will review my qualifications to render an expert medical opinion. I am a graduate of The Georgetown University School of Medicine. I completed an internship and residency in Internal Medicine on The Osler Medicine Service of The Johns Hopkins Hospital. I completed a two year fellowship in the subspecialty of Nephrology. I am a board certified nephrologist. I hold the rank of Associate Professor of Medicine at The Johns Hopkins University School of Medicine where I also serve as Director of The Division of Nephrology. I have served two terms on The Maryland State Kidney Commission, a regulatory body in The State of Maryland overseeing the care of patients in dialysis facilities. I have served on the medical advisory boards of Network 5, and Greenfield Health systems. I am founder and medical director of Integrated Renal Solutions, A disease management company specializing in care of patients on Dialysis. Please see attached CV for additional information.

As you are aware my Fee schedule for reviewing these records is $ 375/ hr.

I have reviewed the following materials prior to rendering an opinion:

1) Plaintiff's 26(A)(2) submission : Eugene Miller
2) Plaintiff's 26(A) (2) submission: Michael Ruddy M.D.
3) Plaintiff's 26(A) (2) submission: Ellen Mellow M.D.
4) Plaintiff's 26(A) (2) submission: Karl Schwartz M. D.
5) Correction Corporation of America Incident Statements: J Hayes 12/29/03 , Deborah Stevens  12/29/03, Jason Anderson ( no date)
6) Plaintiff's second amendment complaint
7) Records Gambro Health Care Dated 9/24/03 – 12/26/03

## Case Summary:

The patient was a 44 year male who was transferred to the Gambro/Davita dialysis unit at Brentwood from 9/24/03 through 12/26/2003. The patient had begun dialysis in 2001. The reason for transfer was due to the fact that the patient was incarcerated. No cause of ESRD is listed. His nephrologist was Dr Zonozi, an independent practitioner with admitting privileges to the Gambro/Davita dialysis facility. At the time of transfer the patient's dialysis access was a dual lumen catheter. During the three months of care at the Gambro/Davita Brentwood facility the patient was monitored according to standards of care. The patient had pre and post dialysis assessments by the Gambro staff. Monthly labs were obtained according to protocol and the patients anemia, iron stores, and hyperparathyroidism were managed according to protocol. Short and long term care plans were documented as were intitial psychosocial assessment and monthly dietician notes.

During the time period listed above, the patient had laboratory evidence of sub therapeutic dialysis adequacy as assessed by monthly Urea Reduction Ratios. Attempts to rectify this by his attending physician included an increase in the patients dialysis time, the use of a large surface area dialyzer, maximizing dialysate flow and where possible blood flow. Other dialysis related issues included hyperphosphatemia and hyperkalemia. Both of these laboratory abnormalities were noted and addressed by the facilities dietician.

The patient's last dialysis at the Gambro/Davita Brentwood facility was on 12/26/2003. The pre and post assessment do not indicate any acute illness. The patient was found on the morning of 12/29/2003 in his cell without spontaneous pulse or respiration. Attempts at resuscitation were not successful.

## Allegations by Plaintiff's expert Dr Ruddy:

1) **"It is possible that the inadequate clearance contributed to the patient's early demise"**. The dialysis record clearly indicates that the

patient did not meet target KT/V or URR. Attempts to rectify this issue by his attending physician included a change in the dialysis prescription to include: (1) increasing the patients dialysis time on dialysis, (2) maximizing both blood and dialysate flow and (3) by using a large surface dialysis membrane. It is the responsibility of the patients attending physician, the only person licensed to prescribe dialysis, to modify this prescription or make the decision to refer the patient for AV access. The dialysis facility is responsible for assuring that the physician's orders are acted upon. In this particular case the dialysis facility noted inadequate dialysis. The dialysis staff in short term care plans dated 10/29/03 and 11/24/03 brought this issue to the attending physician, Dr Zonozi who acknowledged these comments through his signature on the short term care plans and made appropriate changes to the dialysis prescription. There was no deviation in the standard of care on the part of Gambro/Davita Healthcare in regards to sub therapeutic dialysis adequacy for this patient.

2) **"Failure of the dialysis provider to readjust the patients estimated dry weight from 70 kg was a causal factor in precipitating this patient's demise"**. It is unclear from the plaintiff's expert, Dr Ruddy who the "dialysis provider" is. The estimated dry weight of a patient who is maintained on chronic hemodialysis is one of the components of the dialysis prescription. By definition only a licensed physician with privileges to prescribe dialysis has the authority to change any aspect of that prescription, including estimated dry weight. Dr Ruddy suggests that aspects of the patient's history including hypertension, and several episodes of mild to moderate congestive heart failure may have indicated the need for a lower EDW. While periodic hypertension and "episodes of mild to moderate congestive heart failure" may be indicative of volume overload other possibilities exists including non compliance with diet, medication and dialysis. The ability to diagnose the etiology for these symptoms and respond to that diagnoses with a change in prescription is beyond the scope of practice of registered nurses or other non physician employees practicing in a dialysis facility. The statement that an improper EDW was a causal factor in precipitating this patients demise is speculative

Therefore it is my opinion that there was no deviation in the standard of Care on the part of Gambro/Davita Healthcare that contributed to the death of Mr. Farrar.

If you would like to discuss further, please feel free to contact me.

Sincerely,

*[signature]*

Paul J. Scheel, Jr., MD, MBA, FASN